**BOONE COUNTY WATER AND SEWER DISTRICT, Appellant,**

v.

**PUBLIC SERVICE COMMISSION, et al., Appellees.**

**PUBLIC SERVICE COMMISSION, Appellant,**

v.

**BOONE COUNTY WATER AND SEWER DISTRICT, Appellee.**

Nos. 95–SC–733–DG, 95–SC–734–DG.

Supreme Court of Kentucky.

May 22, 1997.

Rehearing Denied Sept. 4, 1997.

John N. Hughes, Frankfort, David A. Koenig, Rouse, Benson & Koenig, Florence, for Boone County Water and Sewer District.

John David Myles, Public Service Commission, Gerald E. Wuetcher, Kentucky Public Service Commission, Frankfort, for Public Service Commission.

Mark G. Arnzen, Arnzen, Parry & Wentz, PSC, Jacqueline S. Sawyers, Covington, for Americoal Corporation.

Roger R. Cowden, Kentucky Utilities Company, Lexington, Kendrick Riggs, John Wade Hendricks, James G. Campbell, Louisville, for Kentucky Utilities Company.

GRAVES, Justice.

This is a review of a Court of Appeals opinion affirming a circuit court judgment which upheld the Public Service Commission's ("PSC") decision requiring Boone County Water and Sewer District ("Boone") to refund unpublished fees. Also, Americoal Corporation ("Americoal") has appealed an order which denied its motion for attorney fees to recover expenses incurred in seeking the refund. Because we find the PSC lacked jurisdiction in Case No. 95–SC–733–DG, all other issues are moot and need not be discussed in this opinion.

Boone is a non-profit public utility which operates a water district and several small sewage treatment facilities, none of which are involved in this action. Boone also operates a sewage collection system pursuant to a contract with Sanitation District No. 1 of Campbell and Kenton Counties ("Sanitation District"). Boone constructed facilities for collecting and transporting the sewage to the Sanitation District's plant. The Sanitation District provides sufficient capacity in its treatment plant for sewage collected and transported by Boone. This arrangement

separates sewage collection and transportation from sewage treatment.

Pursuant to the above-mentioned contract, Boone constructed a new main sewer line known as the Southeast Sewer Line in Southern Boone County. When the internal sewer lines of property owners in this area were connected to the Southeast Sewer Line, Boone assessed a "connection fee" or "capacity fee" of $1,000.00 and an inspection fee of $25.00 for each piece of property. Americoal is the developer of a mobile home park in the area being serviced by Boone's Southeast Sewer Line. Americoal was required by Boone to pay a connection fee and an inspection fee for each individual lot in its mobile home park development when it connected its lines to the Southeast Sewer Line.

Americoal filed a complaint with the Public Service Commission of Kentucky alleging that Boone did not have a tariff on file for the connection fee as required by the "filed rate doctrine" codified in KRS 278.160. The PSC held an evidentiary hearing and entered an order finding that Boone had not filed the capacity fee or the inspection fee, in violation of KRS 278.160. It then required Boone to refund all of the revenue collected from those two fees, plus 6 percent interest, payable over a five-year period. The total amount to be refunded to Americoal was $46,000.00 for connection fees and $1,150.00 for inspection fees. The total amount to be refunded to the remaining customers was $71,000.00 for connection fees and $5,275.00 for inspection fees.

Boone appealed the PSC's ruling to the Franklin Circuit Court. The circuit court entered a judgment upholding the decision of the PSC. Subsequently, Americoal made a motion in the circuit court for its attorney fees and costs incurred in the litigation against Boone to be paid proportionately from the total fund that Boone was ordered to refund to Americoal and the remaining customers. The basis of Americoal's motion was that its legal action resulted in all the other customers receiving refunds from Boone; therefore, the common fund doctrine should be invoked to allow apportionment of the attorney fees and costs to all who benefitted from this litigation. The circuit court denied Americoal's motion.

Boone concedes PSC's jurisdiction over its water system and sewage treatment operations. However, Boone contests PSC's claim of jurisdiction over the collection of sewage. Boone maintains that the PSC does not have jurisdiction over these collection facilities because sewage is only collected through the Southeast Sewer Lines and it is not involved in the treatment of that sewage. Boone points out that collection and transportation of sewage are not mentioned in KRS 278.010(3)(b), which governs public utilities.

KRS 278.040(2) defines jurisdiction of the PSC as follows:

> The jurisdiction of the commission shall extend to all utilities in this state. The commission shall have exclusive jurisdiction over the regulation of rates and service of utilities, but with that exception nothing in this chapter is intended to limit or restrict the police jurisdiction, contract rights or powers of cities or political subdivisions.

KRS 278.260(1) further provides, "(t)he commission shall have original jurisdiction over complaints as to rates or services of any utility, . . . ." A "utility" is defined in KRS 278.010(3) as follows:

> Any person except a city, who owns, controls or operates or manages any facility to be used for or in connection with . . .
>
> (a) The generation, production, transmission or distribution of electricity to or for the public, for compensation, for lights, heat, power or other uses;
>
> (b) The production, manufacture, storage, distribution, sale or furnishing of natural or manufactured gas, or a mixture of same, to or for the public, for compensation, for light, heat, power or other uses;
>
> (c) The transporting or conveying of gas, crude oil or other fluid substance by pipeline to or for the public, for compensation;
>
> (d) The diverting, developing, pumping, impounding, distributing or furnishing of water to or for the public, for compensation;
>
> (e) The transmission or conveyance over wire, in air or otherwise, or any message by telephone or telegraph for the public, for compensation; or

(f) *The treatment of sewage for the public, for compensation, if the facility is a subdivision treatment facility plant, located in a county containing a city of first class or a sewage treatment facility located in any other county and is not subject to regulation by a metropolitan sewer district.* (Emphasis added.)

■ The PSC is a creature of statute and has only such powers as have been granted to it by the General Assembly. The PSC has disclaimed jurisdiction over sanitation districts because sanitation districts are specifically governed by the provisions of KRS Chapter 220. The Commission noted a significant difference between such sanitation districts and water districts when it made and published the following policy statement:

> After reexamining KRS Chapter 278, the Commission concludes that the failure of the legislature to make specific reference to sanitation districts within Chapter 278 is persuasive evidence that the legislature intended to deny the Commission jurisdiction over sanitation districts. By comparison, KRS Chapter 278 has been amended to bring under Commission jurisdiction both water associations organized pursuant to KRS 273 (KRS 278.012), and water districts organized pursuant to KRS Chapter 74 (KRS 278.015). Based upon this analysis, the Commission has concluded that sanitation districts are not utilities within the meaning of KRS 278.010(3)(f), and are therefore exempt from regulation by the Public Service Commission.

(Letter from Forest M. Skaggs, Executive Director the Public Service Commission, to all Sanitation Districts (April 5, 1988)).

■ Sanitation districts are excluded from the provisions of KRS Chapter 278 and consequent PSC regulation, not only by omission, but also by precise placement in another chapter of the Kentucky Revised Statutes. Therefore, a sanitation district is not a utility within the context of KRS Chapter 278.

■ Throughout KRS 278.010(3), which sets the parameters of PSC jurisdiction, explicit language describes the movement of products and services (electricity, natural gas, fluid substance, water, and messages).

Notably, not one such descriptive action word is used for movement of sewage. The legislature chose to mention only treatment in connection with sewage. We should not and cannot enlarge the statute to cover collection and transportation of sewage. This is especially true when the legislature delineated transmission and distribution of electricity, distribution and furnishing of natural or manufactured gas, transporting or conveying fluid substances, distributing and furnishing water, and transmission and conveyance of messages. It is logical to conclude that the legislature did not mention collection and transmission of sewage because the legislature intended that these operations not be regulated by KRS Chapter 278. If the legislature had wanted activities pertaining to sewage collection and transportation to be regulated by the Public Service Commission, it would have specifically so stated in Chapter 278 of the Kentucky Revised Statutes. The legislature did not do so.

The powers of the PSC are purely statutory and it has only such powers as are conferred expressly or by necessity or fair implication. *Croke v. Public Service Commission of Kentucky,* Ky.App., 573 S.W.2d 927 (1978). As a statutory agency of limited authority, the PSC cannot add to its enumerated powers. *South Central Bell Telephone Co. v. Utility Regulatory Commission,* Ky., 637 S.W.2d 649 (1982).

For the foregoing reasons, the opinion of the Court of Appeals and the judgment of the Franklin Circuit Court are reversed. This case is remanded to the Franklin Circuit Court for dismissal of both cases.

STEPHENS, C.J., and COOPER, GRAVES, JOHNSTONE and LAMBERT, JJ., concur.

WINTERSHEIMER, J., dissents in a separate opinion in which STUMBO, J., joins.

WINTERSHEIMER, Justice, dissenting.

I must respectfully dissent from the majority opinion because the proper standard of review has not been applied. There was no clear and satisfactory evidence that the Order of the Public Service Commission was

unlawful or unreasonable in directing refunds of approximately $123,425. The Court of Appeals and the circuit court were correct in holding that the Boone County Water & Sewer District failed to publish or file with the PSC the rates for service associated with the particular sewer collection line and consequently, the Commission was within its authority to order refunds on all fees collected in violation of KRS 278.160.

Boone County Sewer System, one of the largest public sewer utilities in this State, consists of package treatment plants and collector lines. The collector lines transport waste water from Boone County into the sewage treatment system of Sanitation District No. 1 of Campbell and Kenton Counties. The Southeast Line, which is the subject of this action, is a sewer collector line which runs from the South Fork of Gunpowder Creek to the Sanitation District's Dry Creek inceptor line. Without the knowledge or approval of the Public Service Commission, in 1987, the Boone County Water and Sewer District constructed the Southeast Line. The District assessed a $1,000 tap-in, or capacity fee, for each residential unit connecting to the line. The record indicates that between November 1987 and October 24, 1991, the District collected $117,000 in capacity fees. The District also assessed all new sewage customers, regardless of the type of facility which served them, a sewer inspection fee of $25. These fees were not listed in any of its tariffs or PSC applications until October 24, 1991. The Boone District collected approximately $6,425 from the inspection fees.

Americoal, the developer of a mobile home park in the area serviced by the Southeast Line, was required to pay a connection fee and an inspection fee for each individual lot in the mobile home park. In 1990, Americoal filed a complaint with the PSC claiming that the Boone District did not have a tariff on file for the connection fee as required by the filed-rate doctrine codified in KRS 278.160. The Boone District responded that the PSC did not have jurisdiction over the fee because the line was not a sewage treatment facility. The PSC subsequently began its own investigation of the tariffs of the Boone District.

An evidentiary hearing was held in 1991, and in 1992, the PSC found that the Boone District had not filed the appropriate capacity or inspection fee, in violation of the statute, and it required the Boone District to refund all the revenues collected from those fees, plus 6 percent interest, over a five year period. The amount refunded to Americoal was fixed at $46,000 for the connection fee and $1,150 for inspection fees. The total amount to be refunded to the remaining customers was $71,000 for the connection fee and $5,275 for inspection fees.

Boone District initiated judicial review of the order and the Franklin Circuit Court affirmed the PSC's order. In 1995, the Court of Appeals affirmed the judgment of the Franklin Circuit Court in its entirety. This Court granted discretionary review.

During the time this motion was pending before our Court, the Boone District agreed with the Sanitation District for the transfer of its sewer facilities, including the Southeast Collector Line, to the Boone District. This agreement was approved by the PSC in 1995.

I

We must first consider the standard of review applicable to the Public Service Commission. The standard is set out in KRS 278.410(1) which provides that an order of the PSC can be vacated or set aside only if it is found by clear and satisfactory evidence to be unlawful or unreasonable. An order is considered to be unreasonable only when it is determined that the evidence presented leaves no room for differences of opinion among reasonable minds. *Thurman v. Meridian Mutual Ins. Co.*, Ky., 345 S.W.2d 635 (1961). A party challenging a PSC order has the burden of proof to show by clear and satisfactory evidence that the order is unlawful or unreasonable. KRS 278.430. This standard of review is different from that traditionally applied in the appellate review of administrative decisions. The scope of judicial review is very limited. *Cf. Energy Regulatory Com'n v. Kentucky Power Co.*, Ky.App., 605 S.W.2d 46 (1980). *See also Lexington Telephone Co. v. Public Service Com'n*, 311 Ky. 584, 224 S.W.2d 423 (1949).

## II

Boone District appeals on the basis that the PSC does not have jurisdiction over its collection of sewage. The District argues that because it is only collecting sewage through the Southeast Line and is not involved in the treatment of that sewage pursuant to KRS 278.010(3), the PSC does not have jurisdiction over these collection facilities.

KRS 278.040(2) provides that the Commission shall have jurisdiction over all utilities in this State so as to regulate the rates of service of such utility with the exception that nothing is to limit or restrict the powers and duties of cities or political subdivisions.

A utility is defined in KRS 278.010(3)(f) as any person, except a city, who owns or controls or manages any facility to be used for or in connection with ... the treatment of sewage for the public.

I do not believe that we can accept the argument that the collection of sewage does not involve the treatment of such sewage. Although the treatment and collection may not be the same thing, the collection of sewage is clearly an operation "in connection with" the treatment of sewage as contemplated by the statute. The ultimate treatment of sewage is the only purpose for which it is collected and transported. The collection and treatment of sewage are inseparable.

In this instance, collection is the initial stage of treatment because sanitary waste is removed and transported from the site of origination for further processing. The PSC has for over 15 years consistently found that sewage collector lines are facilities used in connection with the treatment of sewage and that their owners are utilities subject to the jurisdiction of the PSC. The practical construction of a statute by administrative officers over a long period of time is entitled to controlling weight. *See Barnes v. Department of Revenue*, Ky.App., 575 S.W.2d 169 (1978); *also Hagan v. Farris*, Ky., 807 S.W.2d 488 (1991).

In addition, in 1994, the General Assembly reenacted KRS 278.010 without changing KRS 278.010(3)(f). I believe the action of the legislature was an adoption of the long-standing interpretation by the PSC.

I must agree with the Court of Appeals and the circuit court that the PSC has at least implied authority to order refunds. KRS 278.040 requires the PSC to enforce the provisions of the Chapter. It is uncontroverted that the Boone District did not file the capacity or inspection fees in its rate schedules in violation of KRS 278.160. KRS 278.160(1) mandates that a utility must file with the Commission schedules showing all rates and conditions for service.

Although the majority believe that the powers of the PSC are purely statutory and must be expressly conferred, I believe that *Croke v. Public Service Com'n of Kentucky*, Ky.App., 573 S.W.2d 927 (1978) includes the concept that such powers can be ascertained by a necessary or fair implication. *Public Service Com'n v. Cities of Southgate and Highland Heights*, Ky., 268 S.W.2d 19 (1954), held that the jurisdiction of the commission to approve the sale of a utility system is necessarily implied from the statutory powers of the Commission to regulate service. The various authorities presented by the Boone District have been analyzed and properly disposed of by the excellent Court of Appeals opinion rendered in this case, and there is no need for further discussion at this time.

The authority of the PSC to order refunds is necessarily implied from the language of KRS 278.040(1) which authorizes the PSC to regulate utilities and enforce the provisions of the statutes. In order to properly enforce the statutes and to prevent the collection of unauthorized rates, the PSC must have the authority to order the refund of unlawfully collected rates. Otherwise, it is unable to perform its statutory responsibility.

*Board of Education of Boyd County v. Trustees of Buena Vista School*, 256 Ky., 432, 76 S.W.2d 267 (1934), held that an administrative agency may exercise powers necessarily implied from its expressed powers and duties. *See also Humana of Kentucky, Inc. v. NKC Hospitals, Inc.*, Ky., 751 S.W.2d 369 (1988).

*South Central Bell Telephone Co. v. Utility Regulatory Com'n*, Ky., 637 S.W.2d 649 (1982), is distinguishable because it involved the power to regulate rates. The present case involves the authority to enforce the other provisions of the statutes. *Public Service Com'n of Kentucky v. Attorney General*, Ky.App., 860 S.W.2d 296 (1993), is not applicable because that decision did not consider the issue of an administrative agency's necessarily implied powers.

The problem presented in this type of case is that service provided by a district is proprietary in nature and it is monopolistic by statutory design and practical requirements. One of the principal functions of the PSC is to provide information, regulation and hopefully protection to the ratepayers and consumers of a service provided by a monopoly enterprise whether that be investor-owned or statutorily created. Here the PSC has not added to its enumerated powers when it employed authority which is by necessity or fair implication required to properly perform its statutory function.

The concern of the majority that a literal and limited behavior is necessary is at variance with the language of KRS 446.080 which states that all statutes of this State shall be liberally construed with a view to promote their objects and carry out the intent of the legislature. The common law rule of strict construction of statute no longer prevails in Kentucky. *Scott v. Curd*, 101 F.Supp. 396 (E.D.Ky.1951). The rules of statutory construction required that all statutes be construed to carry out the intent of the legislature. *Hardin Co. Fiscal Ct. v. Hardin Co. Bd. of Health*, Ky.App., 899 S.W.2d 859 (1995).

I would affirm the decision of the Court of Appeals, the circuit court and the Public Service Commission and permit the refunds.

STUMBO, J., joins in this dissent.